2 McCarthy on Trademarks and Unfair Competition § 12:13 (4th ed.)

McCarthy on Trademarks and Unfair Competition, Fourth Edition
September 2016 Update
J. Thomas McCarthy
Chapter 12. Generic Terms
II. TEST OF GENERICNESS

References

§ 12:13. Types of evidence relevant to genericness

**West's Key Number Digest**
**West's Key Number Digest, Trademarks 1600**

***Timing of Evidence***: Several dates are candidates for the critical date on which to test for genericness. Courts have held that the proper date is the date on which the accused infringer entered the market with the accused designation.[1]

Evidence to prove genericness can include the following:[2]

**(1) *Competitors' Use.*** Generic use by competitors which has not been contested by plaintiff.[3] The fact that the proponent of trademark rights has prevailed on others to settle a claim and admit that the designation is a valid trademark has very little relevance to the understanding of the designation by the public.[4] Nonuse by competitors of the contested designation as a generic name is evidence of non-genericness.[4.50]

**(2) *Plaintiff's Use.*** If the proponent of trademark status itself uses the term as a generic name, this is strong evidence of genericness.[5] A kind of estoppel arises when the proponent of trademark use is proven to have itself used the term before the public as a generic name, yet now claims that the public perceives it as a trademark.[6]

**(3) *Dictionary Definitions.*** While not determinative, dictionary definitions are relevant and sometimes persuasive in determining public usage.[7] This is based upon the assumption that dictionary definitions "usually reflect the public's perception of a word's meaning and its contemporary usage."[8] The Trademark Board has held that judicial notice can be taken of dictionary listings.[9]

But dictionary definitions cannot be conclusive of genericness, "if for no other reason than that this would endow editors of such works with the power to destroy trademarks merely by defining them generically."[10] As the Seventh Circuit observed: "[N]umerous terms have been found to be generic despite their absence from the dictionary."[11] A number of composite terms have been found to be in wide generic use even though they did not appear in a dictionary.[12]

**(4) *Media Usage.*** Generic usage in the media such as in trade journals and newspapers.[13] The Second Circuit has even said that newspaper and magazine use of a term in a generic sense is a "strong indication of the general public's perception" that the term is a generic name.[14] However, where some media uses of a term are as a trademark and some are as a generic name, this source of evidence may be so indeterminate as to be insufficient proof of generic usage.[15] The use of an internet search engine can quickly produce evidence of news and social media generic uses of a designation.[16]

Oulette has suggested that search engine results, such as those of Google, can be an accurate proxy for the meaning and genericness of words. This is because Google's search algorithm that determines listings is based on the frequency with which users click on the top search results and is generally able "to predict what online content consumers associate with a search term."[16.50]

**(5) *Testimony of Persons in the Trade.*** The understanding of those who are familiar with the marketplace usage of the designation in question can be helpful evidence on the genericness issue. However, affidavits from friendly employees and dealers are of little weight, as having the appearance of bias: "Trademark law is skeptical of the ability of an associate of a trademark holder to give an impartial account of the value of the holder's mark."[17]

**(6) *Consumer Surveys.***

Consumer survey evidence on the issue of genericness is discussed in § 12:14.

Westlaw. © 2016 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

Footnotes

| | |
|---|---|
| 1 | *See* § 12:17.50. |
| 2 | *See* Dan Robbins & Associates, Inc. v. Questor Corp., 599 F.2d 1009, 202 U.S.P.Q. 100 (C.C.P.A. 1979) (relevant evidence may consist of purchaser testimony, consumer surveys and listings in dictionaries, trade journals, newspapers and other publications); In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 U.S.P.Q. 961 (Fed. Cir. 1985) (evidence of public understanding of the term may be obtained from "any competent source, such as consumer surveys, dictionaries, newspapers and other publications"); In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141, 1143 (Fed. Cir. 1987) ("Evidence of the public's understanding of the term may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers and other publications."); Glover v. Ampak, Inc., 74 F.3d 57, 37 U.S.P.Q.2d 1602 (4th Cir. 1996) ("[E]vidence may come from purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers and other publications."); Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 64 U.S.P.Q.2d 1761, 2002 FED App. 0341P (6th Cir. 2002), cert. denied, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (U.S. 2003) (sources can include dictionaries, newspapers and other publications, competitors' use, use by the proponent of trademark status and use by third parties in registrations).<br>*See* Zivin, "Understanding Generic Words," 63 Trademark Rep. 173 (1973); Folsom & Teply, "Trademarked Generic Words," 89 Yale L.J. 1323 (1980), 70 Trademark Rep. 206 (1980); Swann, "The Economic Approach to Genericism: A Reply to Folsom & Reply," 70 Trademark Rep. 243 (1980); Dougherty, Daw and Evans, "FTC v. Formica: The Generic Trademark Issue," 2 Communications & Law 1 (1980); Greenbaum, Ginsburg & Weinberg, "A Proposal for Evaluating Genericism After 'Anti-Monopoly,' " 73 Trademark Rep. 101 (1983). |
| 3 | King-Seeley Thermos Co. v. Aladdin Industries, Inc., 321 F.2d 577, 579, 138 U.S.P.Q. 349 (2d Cir. 1963) ("The word 'thermos' became a part of the public domain … because of the plaintiff's lack of reasonable diligence in asserting and protecting its trademark rights in the word 'Thermos' … ."); E. I. Du Pont de Nemours & Co. v. Yoshida International, Inc., 393 F. Supp. 502, 185 U.S.P.Q. 597 (E.D.N.Y. 1975) ("[A] considerable period of acquiescence by the trademark owner in generic use, possibly coupled with a failure to take adequate affirmative action to correct generic use thereafter."); BellSouth Corp. v. DataNational Corp., 60 F.3d 1565, 35 U.S.P.Q.2d 1554 (Fed. Cir. 1995) (The "Walking Fingers" logo became a generic designation because: "AT&T allowed any and all competing publishers of telephone directories to use the logo on their directories … the logo … now identifies the product-classified telephone directories-generally."); Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 19, 87 U.S.P.Q.2d 1385 (1st Cir. 2008) (Relying on the widespread generic use of "duck" and "duck tours" by other companies around the country that provide the same amphibious sight-seeing services. "Duck tours" was found a generic name of amphibious sightseeing tours.); Sheetz of Delaware, Inc. v. Doctors Associates Inc., 108 U.S.P.Q.2d 1341, 1357, 2013 WL 5315963 (T.T.A.B. 2013) (Use by competitors of "footlong" for a sandwich was evidence that it was a generic name for that type of sandwich.). *See* § 17:17. |
| 4 | Colt Defense LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 82 U.S.P.Q.2d 1759 (1st Cir. 2007). |
| 4.50 | E.T. Browne Drug Co. v. Cococare Products, Inc., 538 F.3d 185, 198, 87 U.S.P.Q.2d 1655 (3d Cir. 2008) (Nonuse by competitors of the term "cocoa butter formula" was some evidence that the term was not generic. Court found that a triable issue of fact existed as to the generic status of that term.). |
| 5 | In re Sports Tigers, 213 U.S.P.Q. 670, 1982 WL 52014 (T.T.A.B. 1982) ("Hocker" used generically by applicant); In re Bausch & Lomb, Inc., 206 U.S.P.Q. 534 (T.T.A.B. 1979); Turtle Wax, Inc. v. Blue Coral, Inc., 2 U.S.P.Q.2d 1534, 1987 WL 123820 (T.T.A.B. 1987) (use of a term in a generic, non-source indicating manner by the proponent of trademark rights in the term is persuasive evidence of genericness); Birtcher Electro Medical Systems, Inc. v. Beacon Laboratories, Inc., 738 F. Supp. 417, 16 U.S.P.Q.2d 1411 (D. Colo. 1990) (the advertising of the proponent of trademark status used the term "Argon beam coagulator" as a noun naming a kind of surgical instrument, e.g., Bard ABC Argon Beam Coagulator; this is evidence of generic significance); Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 57 U.S.P.Q.2d 1174 (S.D.N.Y. 2000) (plaintiff and its predecessors, including Joseph Pilates, the founder of the exercise method, used the term "Pilates" in a generic sense to name a method of exercise and associated equipment); Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 70 U.S.P.Q.2d 1603 (4th Cir. 2004) (evidence of the alleged trademark owner's own generic use is strong evidence of genericness); National Nonwovens, Inc. v. Consumer Products Enterprises, Inc., 397 F. Supp. 2d 245, 248, 78 U.S.P.Q.2d 1526 (D. Mass. 2005) (Plaintiff's use of the uncapitalized term "wool felt" as a generic name of its product on its Web site is evidence supporting a finding that "wool felt" is a generic name of the product, not a trademark.). |
| 6 | *See* BellSouth Corp. v. White Directory Publishers, Inc., 42 F. Supp. 2d 598, n. 5, 49 U.S.P.Q.2d 1801 (M.D.N.C. 1999) (Express disavowal of rights by AT&T, followed by extensive third party use resulted in generic status for the "Walking Fingers" logo. AT&T and BellSouth's predecessors "affirmatively represented their belief that the logo was generic, used it in a generic manner, told others to do the same and did not object when others did the same … . [S]uch conduct estops BellSouth from turning on its head over thirty years of history by now seeking trademark protection of the 'walking fingers' logo."); Colt Defense LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 707, 82 U.S.P.Q.2d 1759 (1st Cir. 2007) (Quoting treatise and relying on plaintiff's own usage to find a term to be a generic name.). |

| | |
|---|---|
| 7 | Surgicenters of America, Inc. v. Medical Dental Surgeries, Co., 601 F.2d 1011, 202 U.S.P.Q. 401 (9th Cir. 1979) (dissent would hold that dictionary definition of single words in a composite is not probative of public usage of the composite); S. S. Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694, 202 U.S.P.Q. 545 (1st Cir. 1979) (dictionary definition relied upon); Miller Brewing Co. v. Falstaff Brewing Corp., 503 F. Supp. 896208 U.S.P.Q. 919, (D.R.I. 1980), rev'd on other grounds, 655 F.2d 5, 211 U.S.P.Q. 665 (1st Cir. 1981) (dictionary definitions at most create a rebuttable presumption of consumer perception); Gimix, Inc. v. JS & A Group, Inc., 699 F.2d 901, 217 U.S.P.Q. 677 (7th Cir. 1983) (dictionary is "an especially appropriate source of evidence"); Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 10 U.S.P.Q.2d 1748 (2d Cir. 1989) (dictionary listings are "influential" because they reflect the general public's perception of a mark's meaning and implication); Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 37 U.S.P.Q.2d 1633 (7th Cir. 1996) ("Because generic use implies use consistent with common understanding, we have often looked to dictionaries as a source of evidence on genericness."); Creative Gifts, Inc. v. UFO, 235 F.3d 540, 57 U.S.P.Q.2d 1321, n.5 (10th Cir. 2000) (challenger failed to prove genericness because it presented no consumer surveys and no listings in dictionaries, trade journals or newspapers). |
| 8 | Harley-Davidson, Inc. v. Grottanelli, 164 F.3d 806, 49 U.S.P.Q.2d 1458 (2d Cir. 1999) ("Though not conclusive, dictionary definitions of a word to denote a category of products are significant evidence of genericness … ."). *Accord* Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 70 U.S.P.Q.2d 1603 (4th Cir. 2004) (dictionary definitions were relied upon to find registered term to be a generic name). |
| 9 | In re Patent & Trademark Services Inc., 49 U.S.P.Q.2d 1537, 1998 WL 970180 (Trademark Trial & App. Bd. 1998); Continental Airlines Inc. v. United Air Lines Inc., 53 U.S.P.Q.2d 1385, 1999 WL 1421649 (T.T.A.B. 2000) (taking judicial notice of dictionary definitions in holding "e-ticket" to be a generic name for electronic airline ticketing services); In re 3Com Corporation, 56 U.S.P.Q.2d 1060, n. 3, 2000 WL 1182872 (T.T.A.B. 2000) ("The Board may properly take judicial notice of dictionary definitions, including definitions in technical reference works."). |
| 10 | In re Minnetonka, Inc., 212 U.S.P.Q. 772 (T.T.A.B. 1981). *See* In re Vasco Metals Corp., 154 U.S.P.Q. 191 (T.T.A.B. 1967) (listing of allegedly generic name in Thomas' Register is not conclusive evidence of genericness); In re Bridge, 170 U.S.P.Q. 428 (T.T.A.B. 1971); Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 26 U.S.P.Q.2d 1044, 1050 (3d Cir. 1993) ("Dictionary entries also reflect lexicographical judgment and editing which may distort a word's meaning or importance."). |
| 11 | Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 231 U.S.P.Q. 579 (7th Cir. 1986). *See* Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 38 U.S.P.Q.2d 1771 (7th Cir. 1996) ("No dictionary is complete or completely up to date, or tracks the language of the marketplace perfectly. A number of generic terms are not found in dictionaries."); Continental Airlines Inc. v. United Air Lines Inc., 53 U.S.P.Q.2d 1385, 1999 WL 1421649 (T.T.A.B. 2000); Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 16, 87 U.S.P.Q.2d 1385 (1st Cir. 2008) (District court used dictionary definition of "duck," which did not include any reference to DUKWs or amphibious vehicles. But appellate court reversed, finding that other evidence of genericness prevailed, saying: "[D]ictionary definitions are not conclusive indicators of overall public perception." 531 F.3d at 23). |
| 12 | Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 64 U.S.P.Q.2d 1761, 2002 FED App. 0341P (6th Cir. 2002), cert. denied, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (U.S. 2003) (listing some examples). |
| 13 | Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 207 U.S.P.Q. 465 (1st Cir. 1980); Dan Robbins & Associates, Inc. v. Questor Corp., 599 F.2d 1009, 202 U.S.P.Q. 100 (C.C.P.A. 1979); American Thermos Products Co. v. Aladdin Industries, Inc., 207 F. Supp. 9, 20, 134 U.S.P.Q. 98 (D. Conn. 1962), aff'd, 321 F.2d 577, 138 U.S.P.Q. 349 (2d Cir. 1963); Loctite Corp. v. National Starch & Chemical Corp., 516 F. Supp. 190, 211 U.S.P.Q. 237 (S.D.N.Y. 1981). *See also* Scientific Applications, Inc. v. Energy Conservation Corp., 436 F. Supp. 354, 195 U.S.P.Q. 379 (N.D. Ga. 1977); Birtcher Electro Medical Systems, Inc. v. Beacon Laboratories, Inc., 738 F. Supp. 417, 16 U.S.P.Q.2d 1411 (D. Colo. 1990) (use in generic sense in professional journals). |
| 14 | Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 10 U.S.P.Q.2d 1748 (2d Cir. 1989). |
| 15 | In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141 (Fed. Cir. 1987) (held not to be sufficient evidence of generic usage by the trade). *Accord*: Baroness Small Estates, Inc., 104 U.S.P.Q.2d 1224, 1228, 2012 WL 4763149 (T.T.A.B. 2012) ("A mixture of uses," some generic, some not, was not sufficient to prove that a term was widely used as a generic name.). |
| 16 | In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141, n.1 (Fed. Cir. 1987) (but media uses found by the NEXIS service were not conclusive enough to prove widespread usage of CASH MANAGEMENT ACCOUNT as a generic name). *See* Irani, The Importance of Record Evidence to Categorize Marks as Generic, Descriptive or Suggestive, 83 Trademark Rep. 607 (1993). |

| | |
|---|---|
| 16.50 | Oulette, The Google Shortcut to Trademark Law, 102 Cal. L. Rev. 351, 363 (2014) ("My narrowest claim is that Google and other online search results can serve a function similar to survey data for evaluating distinctiveness where time or cost constraints make it infeasible to conduct a survey. … My broader claim is that Google results can supplant a significant portion of current trademark strength and likelihood-of-confusion inquiries." 102 Cal. L. Rev. at 406.). |
| 17 | Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 35 U.S.P.Q.2d 1342, 1349 (9th Cir. 1995) (Such evidence of the non-generic nature of an alleged trademark was given little weight and was not sufficient on summary judgment to raise a genuine issue of fact. Term was found generic of a type of organization.); Shammas v. Rea, 978 F. Supp. 2d 599, 610 (E.D. Va. 2013) (The testimony of three of plaintiff's customers was not persuasive evidence of non-genericness.). The value of such affidavits is similar to the issue presented of the value of affidavits from friendly business associates on the issue of secondary meaning. *See* §§ 15:74 to 15:78. |

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.